Nick Kovalchick v. Commissioner. Fannie Kovalchick v. Commissioner. Mike Kovalchick v. Commissioner.
Kovalchick v. Commissioner
Docket Nos. 3583, 4746, 4747, 5646, 5647.
United States Tax Court
1945 Tax Ct. Memo LEXIS 158; 4 T.C.M. (CCH) 655; T.C.M. (RIA) 45216; June 19, 1945
*158 Vincent M. Casey, Esq., 720 Grant Bldg., Pittsburgh, Pa. and Charles J. Margiotti, Esq., for the petitioners. Richard L. Shook, Esq., and J. Harrison Miller, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve deficiencies in income tax and fraud penalties, as follows: Year
Docket No.
Taxpayer
Deficiency
Penalty
1937
3583
Nick Kovalchick
$5,845.26
$2,922.63
1938
3583
Nick Kovalchick
1,342.29
671.15
1939
3583
Nick Kovalchick
7,278.11
3,639.06
1940
3583
Nick Kovalchick
4,060.16
2,030.08
1937
5646
Mike Kovalchick
943.80
471.90
1939
4747
Mike Kovalchick
956.79
478.40
1940
4747
Mike Kovalchick
269.26
134.63
1937
5647
Fannie Kovalchick
3,404.00
1,702.00
1939
4746
Fannie Kovalchick
1,041.10
520.55
1940
4746
Fannie Kovalchick
331.30
165.65
On September 9, 1943, respondent determined the deficiencies for 1937, 1938, 1939 and 1940 against Nick Kovalchick, involved in the proceeding entered at Docket No. 3583. After making other adjustments, the respondent taxed all the income of the Mike Kovalchick Salvage Company to the *159 petitioner. In so doing, respondent in the deficiency notice "held that income of the business known as Mike Kovalchick Salvage Company is taxable to you in its entirety for the year 1937 [the determination for the other years was the same] and the existence of an alleged partnership under that name between yourself, your wife, Fannie Kovalchick, and your brother, Mike Kovalchick, is denied for income tax purposes". The determination was further based upon including in the income of petitioner for the years 1938, 1939 and 1940 one-half of the net income of the Banner Coal Company upon the ground that the petitioner, and not the Mike Kovalchick Salvage Company, was a member of the partnership, Banner Coal Company. The petition instituting the proceeding entered at this docket number avers the validity of the equal partnership consisting of Mike Kovalchick, Fannie Kovalchick and Nick Kovalchick from July 1937 through the taxable years. The answer to that petition alleges fraud against the petitioner for all the taxable years, which allegation was denied. On March 3, 1944, respondent determined the deficiencies for 1939 and 1940 against Fannie Kovalchick and Mike Kovalchick, involving *160 the proceedings entered at Docket Nos. 4746 and 4747. In his determination of these deficiencies respondent recognized the partnership but increased by adjustments the distributive share of the income therefrom taxable to each of the two petitioners. The petitions contesting these deficiencies allege "error * * * only for the purpose of protecting * * * [the respective petitioner's] interest because the respondent has assessed tax against another taxpayer, Nick Kovalchick, on the same income. The said Nick Kovalchick has filed a petition before the U.S. Tax Court, Docket No. 3583, with which petition your petitioner herein agrees, and if that petition is granted, the petitioner herein involved can allege no assignment of error. Your petitioner herein files this petition for the sole purpose of preventing collection of the taxes involved pending the outcome of the petition of Nick Kovalchick and the case hereinbefore referred to". The answer of the respondent to both of these petitions alleged fraud against both petitioners for both taxable years, which allegation was denied. On June 5, 1944, respondent determined the deficiencies for 1937 against Mike Kovalchick and Fannie Kovalchick *161 involved in the proceedings entered at Docket Nos. 5646 and 5647. After adjusting the income, by increasing the same, of the Mike Kovalchick Salvage Company, in his determination of these deficiencies respondent determined that one-third of the income of the Mike Kovalchick Salvage Company for the taxable year belonged to Mike Kovalchick and two-thirds of that income belonged to Fannie Kovalchick, the respective petitioners, on the theory that a valid partnership for the taxable period existed, which consisted of Fannie Kovalchick, with a two-thirds interest, and Mike Kovalchick with a one-third interest. The petitions instituting the proceedings entered at these docket numbers contain the same allegation of error as that quoted in Docket Nos. 4746 and 4747. In respondent's amended answer fraud was alleged against both petitioners, which allegation was denied. In his determination of the deficiencies for 1937 respondent has made no allocation of income between January 1 and July of that year when the alleged partnership is said to have been created. He merely treated all the bank accounts of the petitioners, disclosed and undisclosed, as reflecting income of the business and then *162 deducted therefrom certain items of expense - the result, the respondent determined, was the taxable income of the business for the year. He included this amount in income of petitioner, Nick Kovalchick, for that year and determined the deficiency against him on that basis. Petitioner, Nick Kovalchick, contests that deficiency on the ground that the partnership, Mike Kovalchick Salvage Company, was created in July of that year, which continued throughout the tax years, the members of which partnership were Nick Kovalchick, Fannie Kovalchick and Mike Kovalchick, each owning a one-third interest. Respondent, in the meantime, alternatively determined deficiencies against Fannie Kovalchick and Mike Kovalchick for 1937 on the ground that if such a partnership did exist, Nick was not a member during 1937 but that Fannie owned a two-thirds interest and Mike a one-third interest therein. None of the petitioners here contest any of the adjustments made by respondent in computing the income from the business nor do any of them suggest its allocation between the period January 1, 1937 and July of that year, and July to January 1938. Each agrees, and respondent apparently does likewise, that the *163 income of the business for 1937 as determined by respondent shall be considered as correct. All concede that the amount of the respective deficiencies for that year, together with any fraud penalties here sustained, shall rest on the fact of the partnership and the respective interests of each of the petitioners as members therein. The petitioners also concede the correctness of all the adjustments and increases in the income of the business of Mike Kovalchick Salvage Company and the Banner Coal Company, as determined by respondent, for the remaining taxable years. They further concede that waivers of the statutes of limitations were properly filed rendering timely all of the several determinations involved to which such statutes would otherwise apply. The respondent, it will be noted, has determined no deficiencies against either Mike Kovalchick or Fannie Kovalchick for the year 1938. The issues therefore are: 1. Whether the Mike Kovalchick Salvage Company was a bona fide partnership during any part or all of the taxable years 1937 to 1940, inclusive, for Federal income tax purposes and, if so, who were members thereof and what were their respective interests therein. 2. *164 Whether a one-half interest in the Banner Coal Company, a partnership, belonged to Nick Kovalchick, individually, or to the Mike Kovalchick Salvage Company. 3. Whether any part of the deficiencies that may be determined herein is due to fraud with intent to evade income taxes. The cases were submitted on oral and documentary evidence. Findings of Fact Petitioners are individuals. Nick Kovalchick and Fannie Kovalchick are husband and wife. Mike Kovalchick is a brother of Nick Kovalchick. Nick and Fannie Kovalchick resided at Indiana, Pennsylvania, and Mike Kovalchick at Sagamore, Pennsylvania. Each petitioner filed separate income tax returns for the respective taxable years with the collector of internal revenue for the twenty-third district of Pennsylvania, in Pittsburgh. Mike Kovalchick Salvage Company was a bona fide business partnership and entitled to recognition as such for Federal income tax purposes from July 1937 through 1940. The members of that partnership throughout that period were Nick Kovalchick, Fannie Kovalchick and Mike Kovalchick, and each owned a one-third interest therein. Nick Kovalchick, individually, and not Mike Kovalchick Salvage Company, was a *165 partner and owned a one-half interest in the partnership, Banner Coal Company. Part of each of the deficiencies in income taxes against Nick Kovalchick for the taxable years 1937, 1938, 1939 and 1940 is due to fraud with intent to evade tax. Part of each of the deficiencies in income taxes against Fannie Kovalchick for the taxable years 1937, 1939 and 1940 is due to fraud with intent to evade tax. Opinion Restating the issues as they are considered, the first is whether Mike Kovalchick Salvage Company was a bona fide business partnership during any part or all of the taxable years 1937 to 1940, inclusive, for Federal income tax purposes and, if so, who were the members thereof and what were their respective interests therein. This issue here, we think, involves only a question of fact. It has been so disposed of in our findings of fact in accordance with the evidence, as we believe. Compare Felix Zukaitis, 3 T.C. 814; H. D. Webster, 4 T.C. 1169 (Apr. 23, 1945). In about 1925, Nick Kovalchick engaged in the junk and salvage business on a small scale. It may be noted that respondent does not contend, as we think he could not, that this business was *166 within the category of so-called "personal service". See Earp v. Jones, 131 Fed. (2d) 292; and Tinkoff v. Commissioner, 120 Fed. (2d) 564. Nick early employed his brother Mike, who was then a boy of 14 or 15. The wages paid to Mike were very small during Nick's operation of the business. In 1932 Nick married Fannie Scholnick, then 17 years of age, whose father had been engaged in the scrap and clothing business. Fannie was not satisfied with their living accommodations at the Sagamore Hotel, Sagamore, Pennsylvania, where Nick and she lived in a small room, and in the yard adjacent to which hotel Nick kept his scrap. Nick persuaded Fannie and Mike to go along with conditions as they were and to co-operate with him in building up the business, by promising them each an equal interest in the business when it became more prosperous. In 1936, one of the trucks which Nick used in his business became involved in an accident and Nick was sued for damages approximating $30,000. Since his liability insurance coverage was limited to $5,000, Nick became apprehensive lest a large judgment be obtained against him and his business destroyed. After the suit was calendared *167 to appear on the 1937 Trial Calendar of the Common Pleas Court, Nick, Fannie and Mike went to the office of an attorney to consult about the formation of a partnership to engage in the junk and salvage business. After discussing the matter, the attorney drafted a partnership agreement which was executed by Fannie and Mike, in which it was provided that Fannie should have a two-thirds interest and Mike a one-third interest in the profits and the losses, to be similarly shared. Mike and Fannie properly registered under the Fictitious and Assumed Names Act of the State of Pennsylvania (Act of June 28, 1917,) that they were the owners of and operating the business known as Mike Kovalchick Salvage Company. Nick transferred the scrap on hand, 4 trucks, a tractor, and other property, estimated by him as having a value of between $20,000 and $25,000, to the partnership and the business was thereafter openly conducted under the name of Mike Kovalchick Salvage Company. Fannie filed a partnership information return for 1937, in which the interests in the partnership were set up in accordance with the written agreement. She and Mike each returned the share of the income from the business in *168 accordance with their interests as appearing in that agreement. Despite this evidence that the partnership was composed of only Fannie and Mike, we think the evidence is convincing that the fact, with which we are alone concerned, was otherwise. Before having the partnership agreement drawn and executing it, it is admitted that the definite understanding between Nick, Fannie and Mike was that Nick was not to appear as a member of the partnership in the formal agreement or in the registration statement, but Fannie was to hold his interest for him until the settlement of the damage suit, immediately after which he was to automatically acquire one-half of the two-thirds which the agreement and registration evidenced as being Fannie's. The damage suit was settled in November of 1937. But no new partnership agreement was drawn after that settlement of the damage suit and no new registration was filed under the Fictitious and Assumed Names Act. Whether this arrangement would have been effective in saving Nick from the consequences of a judgment obtained against him in the damage suit is not our question. In any event, we think it was wholly ineffective in our determination of the actual *169 fact as to who were members of the partnership during the period from the execution of the partnership agreement to the settlement of the suit. See T. G. Nicholson, 38 B.T.A. 190. In attacking the validity of the partnership for income tax purposes, respondent takes the position that it should be ignored because it was conceived in an attempt to defraud creditors. We can not agree. It may well be that the partnership was created at a time when Nick believed he could accomplish his protection from meeting his possible liability in the damage suit at the same time he was fulfilling his promise to his wife and brother to give them each a one-third interest therein. But the idea of the partnership was not borne of fraud. It was only the keeping of a promise. The making and meeting of that commitment was only simply justice to Fannie and Mike through whose efforts, otherwise uncompensated, the business had grown up and prospered. It was the only basis and was the consideration for the continuance of the connection of Fannie and Mike with the business. The contention that the partnership was fraudulently conceived is conclusively answered, it seems to us, by the fact that *170 it did not dissolve and again become a sole proprietorship on the settlement of the damage suit. The business out of which this partnership grows was not a large and prosperous going business whose assets and good will were then divided and apportioned to members of the family. Whatever success the business enjoyed while it was conducted by Nick Kovalchick, as an individual, was due to the services of the 3 individuals who later composed the partnership. Both Fannie and Mike had contributed their fair share towards building up the business. It was not unnatural, under the circumstances, that Nick realized that rewarding Fannie and Mike in accordance with his promise so to do, by creating the partnership with them as equal members, would promote the progress of the business and secure its future. Felix Zukaitis, supra; H. D. Webster, supra. During 1938, about June, E. E. Wells, a public accountant, was employed to set up a set of books for Mike Kovalchick Salvage Company. He was advised by Nick, Fannie and Mike Kovalchick that they were equal partners in Mike Kovalchick Salvage Company and that the profits and losses were to be so shared. Since no regular *171 books of account had been kept prior to that time, Wells reconstructed the accounts from the bank books disclosed to him, deposit slips, cancelled checks, sales slips and such information as Nick and Fannie could supply. No capital account for each member was provided. Wells explained that each would own a one-third interest in the aggregate capital. No salaries were paid to any partner but separate drawing accounts in the name of each of the individuals were made which reflected the respective amounts withdrawn by each. After setting up the books Wells instructed Fannie, who was to keep them, how the accounts should be carried and for some time returned every 30 days to see if they were being maintained in accordance with his instructions. In each of the years 1938, 1939 and 1940 Wells prepared partnership returns from the books, and the individual returns of each of the partners for the same years. From and after July 1, 1937 the work incident to the business of Mike Kovalchick Salvage Company was divided among Nick, Fannie and Mike as follows: Nick arranged for the finances of the business, made its contacts and the contracts for the purchase or sale of property involving any considerable *172 amount; Mike took charge of the salvage jobs after they had been obtained and bought and sold merchandise; Fannie had charge of the books, attended to the invoicing and the bank deposits, had general charge of the office in the absence of her husband, bought and sold merchandise, and made the collections. Nick and Mike devoted all of their time to the business while Fannie devoted about 8 hours a day. In small matters each partner had independent authority to act for the partnership but where larger deals were involved discussed the matter among themselves before a decision was made. From July 1937 the trucks, letterheads and invoices of the business all bore the name "Mike Kovalchick Salvage Company". Many banks, corporations, business corporations and firms, large and small, and individuals all dealt with the partnership as such and all recognized the 3 petitioners as partners therein. Loans were made by banks in the partnership name on the signatures of the 3 individuals as partners. Real property was purchased and taken in the partnership name. Employees accepted instructions from each of the 3 petitioners as partners, and their wages were paid by checks drawn on the bank account *173 in the partnership name. We think the credible evidence justifies the conclusion that the Mike Kovalchick Salvage Company was a bona fide partnership from July 1937 through the taxable years and that Nick, Fannie and Mike Kovalchick were its members, each owning a one-third interest therein. Restating the second issue, it is: Whether a one-half interest in the Banner Coal Company, a partnership, belonged to Nick Kovalchick, individually, or to the Mike Kovalchick Salvage Company. This issue likewise involves only a question of fact. Our findings of fact dispose of it. The evidence, we think, amply supports those findings. On September 21, 1938, Nick Kovalchick entered into a written partnership agreement with J. H. Wallin to operate a bituminous coal mine in partnership, each to have a one-half interest therein and share the profits and losses in proportion. The name was duly registered under the Fictitious and Assumed Names Act of the State of Pennsylvania, cited supra. Such registration evidenced that the owners of the business were Nick Kovalchick and J. H. Wallin, one-half being owned by each. The respondent does not question the bona fides of this partnership. The partnership *174 agreement states that the parties were to associate themselves "in the art and trade of mining, digging, stripping and otherwise producing bituminous coal * * *; holding, using, buying and selling mining equipment, ties, props, machinery and other kindred articles belonging to the mining business". The business was to be operated under the name "Banner Coal Company". The agreement stipulated that mining equipment worth approximately $7,000 had been contributed, "which personal property is equally owned by said named co-partners". It also provided that leases of the two tracts of coal were "to be drawn in such form as to give each named partner an equal undivided interest therein". There was a provision covering the sale of the interest of either partner to the other. A further proviso covered the disposition of the property in the event of the death of either partner and, in substance, provided for the sale within a year from the death of such partner to the survivor or to someone acceptable to the surviving partner, at a price to be determined at a fair appraisal. On January 14, 1939 and January 16, 1939, Nick Kovalchick and J. H. Wallin executed and filed separate certificates for *175 registration under the Fictitious Names Act of Pennsylvania, in which it was stated that the only interested parties were Nick Kovalchick and J. H. Wallin. The partnership returns filed by the Banner Coal Company for the respective years 1938, 1939 and 1940 disclosed that Nick Kovalchick and J. H. Wallin were the only partners. For the years 1939 and 1940 the partnership income tax returns showed a net income. The individual income tax returns of Nick Kovalchick for the years 1939 and 1940 disclosed that he reported one-half the income from the Banner Coal Company as his individual income. The Banner Coal Company suffered a loss for the taxable year 1938 of $1,807.62. Petitioner, Nick Kovalchick, claimed no part of this loss in his return for this year. The individual return of Nick Kovalchick for 1938 disclosed no taxable income without claiming any deduction on account of the loss sustained by the Banner Coal Company. The distributive share of the loss of the Banner Coal Company for 1938, to which Nick Kovalchick was entitled, was $903.81. Aside from the overwhelming documentary evidence against petitioner's contention, there are other considerations pointing the same way. The *176 coal operation was a new kind of adventure in which Nick had no previous experience. He did not want to jeopardize the interest of Mike Kovalchick Salvage Company in case of a mine disaster or in the event the project proved unsuccessful. There is not the slightest evidence that the other member of the firm, J. H. Wallin, ever assented to a partnership with Mike Kovalchick Salvage Company. Wallin was not called as a witness. The essence of a partnership is that the members thereof agree to associate themselves with each other to carry on a business. Cf. Burnet v. Leininger, 285 U.S. 136. Thus we have concluded that the one-half interest in the Banner Coal Company belonged to Nick, individually. The third and last issue involves the propriety of the imposition of fraud penalties imposed under section 293(b) of the Internal Revenue Code and the corresponding provisions of the Revenue Acts of 1936 and 1938. Similarly with the other issues, this question is solely one of fact. The respondent has the burden of proof. Our findings of fact answer this question as to each of the petitioners upon evidence which we think is compelling. Petitioner, Nick *177 Kovalchick, on his return for 1937 reported taxable income of $2,288.25, and a net taxable income of $409.42 on which he paid a tax of $16.38. In this return he treated his income received from the salvage business "as salaries and compensation from Mike Kovalchick Salvage Co. $2400.00" which was all the income he reported. He later filed an amended return for this year which was prepared by the accountant Wells. In this return he reported income in the form of salaries and other compensation from Mike Kovalchick Salvage Company of $1,200, by which, it would seem, he was accounting for the income he received from Mike Kovalchick Salvage Company or the salvage business, received from July 1937 to January 1, 1938, because he reports another item of income from that business for the period January 1, 1937 to July 1, 1937 in the amount of $1,939.30. The amended return showed a net taxable income of $1,077.55 upon which a tax was due of $43.10. Having already paid $16.38, he paid the additional tax due on the additional net income as shown in his amended return in the sum of $26.72 increased by $.60 interest or a total of $27.32. Respondent increased his income by $37,606.81 by charging *178 him with the total net income of Mike Kovalchick Salvage Company which was determined to be $39,895.06. Respondent allowed a deduction of $10 for a contribution. Since we have found that Nick Kovalchick was a partner of Mike Kovalchick Salvage Company during the period in 1937 in which the partnership existed, with a one-third interest therein, his share of the partnership income for that year was one-third of $39,895.06, or $13,298.35. Nick thus understated his taxable income for 1937 by the amount of $11,010.10, ($13,298.35-$2,288.25). In effect he concedes that if the partnership is recognized and his interest therein as one-third, he understated his income for 1937 by this amount of $11,010.10, as stated. However, Nick denies fraud and explains the large understatement - about one-fourth of his income - by saying that he was not a member of the partnership during that period but was an employee only and so returned his income. We have found that this was not a fact but that he was a member of the partnership, owned a one-third interest therein and knew that at the time. His naive and abortive attempt to hide these facts in an effort to protect himself from the consequences of *179 the damage claim against him was something less than ineffective here. See T. G. Nicholson, supra. During this period no books of account were kept. Under the circumstances, this gross understatement of taxable income, we think, unmistakably brands it as fraudulent with intent to evade tax. It has been so found. This petitioner, on his income tax return for 1938, reported a net taxable income of $2,182.22 from Mike Kovalchick Salvage Company as a one-third partner therein. The partnership return filed for the company for that year disclosed a net loss of $9,101.71. Respondent has determined that the net distributable income of that company for that year was $19,176.39. Petitioner agrees that this amount is correct. The amount was determined as follows: Income from sales was increased by the amount of $29,800.02; additional deductions were allowed consisting of additional purchases of $271.21; salaries to others of $911.59; and an increase of depreciation in the amount of $339.12 - aggregating $1,521.92. From the amount thus computed, $28,278.10, was deducted the net loss of $9,101.71, leaving a net distributable income for Mike Kovalchick Salvage Company for the year *180 1938 of $19,176.39. Since, as we have held, the petitioner, Nick Kovalchick, owned a one-third interest in Mike Kovalchick Salvage Company throughout 1938, his distributable and taxable share of the income for that year for that company was one-third of $19,176.39 or $6,392.13. To this figure respondent has added an item of $147.69, interest on the savings account of this petitioner, the correctness of which petitioner admits. Respondent has then allowed the deduction of $903.81 as one-half the loss resulting from the operations of the Banner Coal Company, in which respondent has determined and we have found that the petitioner, Nick Kovalchick, was a member owning a one-half interest therein. The correct taxable income of petitioner, Nick Kovalchick, for the taxable year 1938 was therefore $5,636.01. Since he reported only $2,182.22, the petitioner, Nick Kovalchick, understated his income for that year by the amount of $3,453.79. In effect, he concedes this. The partnership returns for each of the years 1938, 1939 and 1940, as well as the individual returns of the petitioners, Nick Kovalchick, Fannie Kovalchick and Mike Kovalchick, were prepared by an accountant, Wells, who at their *181 direction set up the books of the partnership as of January 1, 1938. Neither at the time these books were set up, when the partnership or individual returns of the members thereof were prepared, nor at any other time did any of the partners advise the accountant Wells nor was he aware of any other accounts of the partnership than those in the commercial bank accounts with the People's Bank of Rural Valley and the Blairsville Savings & Trust Company. He was not informed during all the taxable period nor was he aware during that time of certain other accounts in which partnership income was deposited during 1938, 1939 and 1940, in the following banks: the Deposit National Bank of DuBois, the Butler County National Bank & Trust Company, the Savings & Trust Company of Indiana, the Blairsville Savings & Trust Company and the Fannie Kovalchick savings account in the Blairsville Savings & Trust Company. The deposits in many, at least, of these undisclosed bank accounts were not reflected upon the books of the Mike Kovalchick Salvage Company, from which the partnership and individual returns of the members thereof were made. These deposits were in most instances the proceeds of sales of partnership *182 property and admittedly constituted income and were not reported for income tax purposes. The existence of these additional bank accounts was not disclosed to the Internal Revenue examiner who examined the books of the partnership and the petitioners, until after he informed petitioner, Nick Kovalchick, of his knowledge of the existence of these accounts. For the period January 1, 1938 to July 20, 1938, sales, rents, and miscellaneous income of the partnership disclosed by the books amounted to $38,806.80 but the actual amount thereof, as admitted by petitioner and determined by respondent, was $68,606.82. The understatement of partnership income as well as the concurrent understatement of income of petitioner, Nick Kovalchick, for 1938, resulted at least in part from these unreported proceeds of partnership sales. The petitioner explains these understatements as being caused by misunderstandings, innocent mistakes, and ignorance. In this picture, we think, and have so found, that when Nick Kovalchick understated his net taxable income for the year 1938 in the amount of $3,453.79, he did so with a fraudulent intent to evade income tax. The income tax return of petitioner, Nick *183 Kovalchick, for the year 1939 reported a net taxable income of $3,339.32, consisting of $455.42 from Banner Coal Company and $2,883.90 from Mike Kovalchick Salvage Company. The net income of the latter company was reported on the partnership return as $8,651.68. The adjusted net income of that company for this year as determined by respondent and agreed to by petitioner was $39,764.30, one-third of which, $13,254.77, was taxable to petitioner. These adjustments consisted of additions to income in the aggregate of $31,631.27 and additional deductions in the sum of $518.65. Respondent determined the distributive share of one-half of the income from Banner Coal Company of petitioner, Nick Kovalchick, for this year to be $5,683.99, and so increased his income from that source by $5,228.57. No fraud with respect to the Banner Coal Company is claimed. Respondent also added an item to this petitioner's income for this year of $101.78. None of these adjustments are in controversy. The understatement of the partnership income of the Mike Kovalchick Salvage Company of this year and the concurrent understatement of this petitioner of his share of that income resulted in part from the understatement *184 of sales by that company in the amount of $9,560.30. It is upon this understatement of the proceeds of sales that respondent rests his determination of fraud for this year. This understatement was brought about by the omission of 3 items. One of these items was the proceeds of sales of salvaged material from an operation known as the Warren job, amounting to $5,010.30, which were deposited in one of the bank accounts but were not credited on the books of the company from which the returns of both partnership and partners were made. The second item consisted of the proceeds from sales of inventory amounting to $2,750 which, instead of being credited to the sales account on the book of the company were there credited to a special account of Nick Kovalchick, petitioner. The third item was one of $1,800, the proceeds of some sales of partnership property which were not credited on the books of the company from which the returns of the partnership and the partners were made but were deposited in the National Bank of DuBois which was one of the accounts not revealed until after the investigator of the respondent advised this petitioner of its known existence. After giving effect to a decrease *185 in reported profits of sales by the amount of $1,150, the 3 items above mentioned constituted an understatement of the proceeds of sales in this year by the partnership in the net amount of $8,410.30. The denial of fraud in this understatement is supported only by testimony that it resulted from misunderstandings, ignorance or forgetfulness. To say the least, none of this testimony is convincing in the face of this record. We think, and have so found, that this understatement of the proceeds of sales was fraudulently made on the partnership return and the income reported by the petitioner, Nick Kovalchick, thus reduced, with the knowledge of the petitioner, Nick Kovalchick, fraudulently with the intent to evade tax. The income tax return of petitioner, Nick Kovalchick, for the year 1940 disclosed a net taxable income of $4,590.89. Income from Banner Coal Company was reported as $572.91 and income from the Mike Kovalchick Salvage Company was reported as $4,117.98. Deductions totaling $100 were claimed. The net income of Mike Kovalchick Salvage Company, as reported on the partnership return, was $12,353.94. Respondent adjusted this net income of the company by increasing it, with the *186 agreement of this petitioner, to $19,472.78, one-third of which, or $6,490.93, was distributable to and taxable to petitioner. On audit of the return of Banner Coal Company for 1940, respondent increased petitioner's distributive share of its income from $572.91 to $7,068.50. An item of interest income in the amount of $234.71 was added to petitioner's taxable income for this year. Respondent rests his charge of fraud for this year on the understatement of income from Mike Kovalchick Salvage Company, in the amount of $5,719.20. This amount is made up of 3 items: first, receipts from sales of inventory amounting to $250 which were credited to a special account of this petitioner in one of the banks, and not credited on the books of the company; second, sales of inventory in the amount of $1,230.87 deposited in an individual account of this petitioner with the Butler County National Bank & Trust Company at Butler, Pennsylvania, and not credited on the books of the company; and third, a fictitious debit of $4,238.33 made to purchases during this year but, instead of making a purchase, the money was used to open a new account in the joint names of this petitioner and his wife, Fannie Kovalchick, *187 petitioner, with the First National Bank of Indiana. These accounts were two of those the existence of which was not disclosed until after the Internal Revenue investigator advised the petitioner, Nick Kovalchick, that he knew of their existence. The returns of the partnership and the 3 partners were made up from the books of the company as thus constituted. The petitioners support their attempts to deny fraud in this instance by the same lame excuses of forgetfulness, ignorance or misunderstanding similar to those used in expressing understatements for the other years. Of course they are no more effective here than they were in those instances. Our findings give effect to that conclusion. The understatements of income of Mike Kovalchick Salvage Company for the respective years 1937, 1939 and 1940, just discussed in connection with the petitioner, Nick Kovalchick, are equally applicable to the petitioner, Fannie Kovalchick, his wife. She kept the partnership books during these years, had knowledge of all the bank accounts standing in the name of her husband and herself which were not disclosed to the accountant when the books were set up as of January 1, 1938, nor were they revealed *188 to the Internal Revenue examiner until after the audit of the returns was commenced and she and her husband were advised that the existence of these accounts was known to respondent. All of these accounts contained partnership funds in the form of proceeds from sales. Her explanation of these understatements as being due to misunderstandings, ignorance and forgetfulness, we do not believe. She knew that the returns of the partnership and her own returns for these years were made up from the books of the company. She permitted them to be so made and as made signed and swore to the returns. We think these understatements of income of the partnership and her income resulted from her fraud, as well as that of her husband in the making of the returns, with the intent to evade tax. Since respondent did not determine a deficiency against petitioner, Fannie Kovalchick, for the year 1938, the propriety of a fraud penalty against her for that year is not in issue. Petitioner, Mike Kovalchick, is, we think, in a different situation. The evidence is not sufficiently convincing to support the allegation of fraud against him in 1937, 1939 or 1940. We are left in considerable doubt as to whether *189 this petitioner, Mike Kovalchick, knew of the existence of the undisclosed bank accounts to which reference has been made above. His income tax returns for these years were prepared by the accountant Wells from the partnership books. Mike took no part in the keeping of the books of the company and there is nothing to show that he knew these books were not accurately kept. We therefore find that the respondent has failed to sustain his burden of proof in establishing that any part of the deficiency in income taxes of Mike Kovalchick for 1937, 1939 or 1940 was due to his fraud with intent to evade tax. Since respondent determined no deficiency against petitioner, Mike Kovalchick, for the year 1938, no fraud penalty is in issue for that year as to this petitioner. Except as to the petitioner, Mike Kovalchick, we think and have so found that fraud has been established as to each of the petitioners for each of the years in controversy. We have not the slightest doubt that part of each of the admitted deficiencies as computed under Rule 50, except those against the petitioner, Mike Kovalchick, resulted not from negligence but from the fraud of each petitioner with intent to evade income *190 tax. Decisions will be entered under Rule 50